UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**KNIFE RIGHTS, INC., ET AL.,**

Plaintiffs,

v.                                    **No. 4:24-cv-0926-P**

**PAMELA BONDI, ET AL.,**

Defendants.

## OPINION & ORDER

Before the Court are two motions: (1) Plaintiffs Knife Rights, Inc.'s ("Knife Rights"), Russell Arnold's, RGA Auction Solution's, Jeffrey Folloder's, MOD Specialties's, Evan Kaufmann's, Adam Warden's, and Rodney Shedd's Motion for Summary Judgment (ECF No. 16); and (2) Defendants' Motion to Dismiss (ECF No. 23). For the reasons set out below, the Court will **GRANT** Defendants' Motion and **DENY** Plaintiffs' Motion as moot.

## BACKGROUND

Plaintiffs filed this case on September 27, 2024, challenging the constitutionality of the Federal Switchblade Act (the "FSA") as inconsistent with the Second Amendment to the United States Constitution. The FSA prohibits: (1) the introduction, manufacture for introduction, transportation, or distribution into interstate commerce of "switchblade knives;" and (2) the manufacture, sale, or possession of any "switchblade knife" within "Indian country," including tribal reservations, and federal land, National Parks and land managed by the Bureau of Land Management ("BLM"). 15 U.S.C. §§ 1242, 1243. Plaintiffs challenge the FSA's prohibitions on the grounds that switchblades are bearable arms within the meaning of the Second Amendment and are therefore protected. Plaintiffs ask the Court for a preliminary and permanent injunction restraining the Government from enforcing the FSA and for a declaratory judgment that the relevant

provisions of the FSA and Defendants' enforcement of them violate the Second Amendment to the United States Constitution.

Knife Rights is a section 501(c)(4) member advocacy organization incorporated under the laws of Arizona with a primary place of business in Gilbert, Arizona. Knife Rights serves its members, supporters, and the public through efforts to defend and advance the right to keep and bear bladed arms. Knife Rights brought this action on behalf of its members and the named Plaintiffs. Knife Rights' members include peaceable, law-abiding individuals in Texas who wish to acquire and possess automatically opening knives.

The other Plaintiffs are Russell Arnold and his business RGA Auction Services, Jeffrey Folloder and his business MOD Specialties, Evan Kaufmann, Adam Warden, and Rodney Shedd. Arnold, Folloder, Kaufmann, Warden, and Shedd (collectively, the "Individual Plaintiffs") are peaceable, nonviolent individuals who are otherwise eligible to keep and bear arms under state and federal law. The Individual Plaintiffs wish and intend to acquire, possess, carry, and offer for sale and distribute through interstate commerce, automatically opening knives for lawful purposes, including self-defense. The Individual Plaintiffs allege they would acquire, possess, carry, offer for sale, and distribute through interstate commerce such knives but for the Government's enforcement of the Act. The Individual Plaintiffs are members of Knife Rights. RGA Auction Services and Mod Specialties (the "Retail Plaintiffs") are small businesses that wish to buy and sell switchblades in interstate commerce.

## LEGAL STANDARD

When a 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the 12(b)(1) motion must be addressed first. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction alleges that the court lacks the authority to hear the dispute. *See* FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The

2

party invoking the court's jurisdiction bears the burden of demonstrating that jurisdiction exists. *Ramming*, 281 F.3d at 161. Courts may dismiss for lack of subject-matter jurisdiction on any of three separate grounds: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (cleaned up).

To challenge subject-matter jurisdiction under Rule 12(b)(1), a party can make either a facial or factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A 12(b)(1) motion that challenges standing based on the pleadings is considered a facial attack, and the court reviews only the sufficiency of the pleading's allegations, presuming them to be true. *Id.* If a defendant makes a factual attack on subject-matter jurisdiction by submitting evidence, such as affidavits and testimony, the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Kling*, 60 F.4th at 284 (cleaned up). In a factual attack, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (cleaned up). Further, in a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Since the Government has provided evidence in the form of an affidavit attacking the Individual and Retail Plaintiffs' standing, that is a factual attack on subject-matter jurisdiction. Therefore, the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject-matter jurisdiction." *Kling*, 60 F.4th at 284 (cleaned up). However, since the Government has not presented evidence attacking Knife Rights' individual standing, that is a facial attack. Therefore, the Court reviews only the sufficiency of the pleading's allegations, presuming they are true when evaluating Knife Rights' individual standing. *See Paterson*, 644 F.2d at 523.

3

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pled facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pled factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 678.

## ANALYSIS

Plaintiffs challenge the constitutionality of three provisions of the FSA—Sections 1242, 1243, and 1244. Section 1242 prohibits the introduction, manufacture for introduction, transportation, or distribution of switchblades in interstate commerce. 15 U.S.C. § 1242. Section 1243 prohibits the manufacture, sale, or possession of any "switchblade knife" within "Indian country," including tribal reservations, and federal land, such as BLM public land and National Parks. *Id.* at § 1243. And Section 1244 provides exceptions to the FSA's prohibitions. *Id.* at § 1244. Defendants assert Plaintiffs lack standing to challenge the provisions and, in the alternative, Plaintiffs have failed to state a claim upon which relief can be granted. ECF No. 23. Plaintiffs disagree and argue that the Court should grant summary judgment in their favor. ECF No. 16. Because the Court finds that Defendants'

Motion should be granted, it will not address Plaintiffs' Motion as it is moot.

## A. Standing

Defendants argue that the Court should follow Judge Reed O'Connor's holding of no standing in this case's predecessor, filed in 2023. *See* ECF No. 25 at 5 (citing *Knife Rights, Inc. v. Garland*, No. 4:23-cv-00547-0, 2024 WL 2819521 (N.D. Tex. June 3, 2024) (hereinafter "*Knife Rights I*")). In response, Plaintiffs claim that this case is distinguishable from the prior lawsuit. ECF No. 29 at 8–25. Because Plaintiffs challenge three different provisions, the Court addresses their standing to challenge each.

### 1. Section 1242

The Court begins with Section 1242—the provision that Plaintiffs challenged in the *Knife Rights I*. In *Knife Rights I*, Judge O'Connor found that the Individual and Retail Plaintiffs lacked standing because the case was "a mere hypothetical dispute lacking the concreteness and imminence required by Article III" because Plaintiffs failed to show a credible threat of prosecution. *Knife Rights I*, 2024 WL 2819521, at *3. Similarly, Judge O'Connor found that Knife Rights, as an organization, lacked standing to challenge the provision on behalf of its members or on its own behalf. *Id.* at *4–5. But as Plaintiffs discuss in their Response, this case involves additional Plaintiffs and allegations of enforcement. *See* ECF No. 29 at 8–25. The Court begins with whether the Individual and Retail Plaintiffs have standing before turning to Knife Rights.

#### a. Individual and Retail Plaintiffs

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . ., which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "One element of the case-or-controversy requirement" commands that a litigant must have standing to invoke the power of a federal court. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "Standing is a jurisdictional requirement and not subject to waiver." *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496 n.1 (5th

Cir. 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996)).[1] "Standing to sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within our proper judicial sphere." *Id.* at 496–97.

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The "Supreme Court has instructed that a court's inquiry into standing should be 'especially rigorous when reaching the merits of a dispute would force it to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'" *Hotze v. Burwell*, 784 F.3d 984, 992 (5th Cir. 2015) (quoting *Clapper*, 568 U.S. at 408) (internal alteration omitted)). "The irreducible constitutional minimum of standing contains three elements: (1) The plaintiff must have suffered an injury in fact . . .; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, that the injury will be redressed by a favorable decision." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) (citing *Lujan*, 504 U.S. at 560–61 (cleaned up)). The second and third elements are uncontested, but the Parties dispute whether Plaintiffs have sufficiently established an injury in fact. In the context

---

[1]Under recent Supreme Court precedent, determining whether a party has standing to bring a lawsuit can be a very treacherous undertaking for district court judges, comparable to exploring uncharted territory with no compass. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S. 255 (2023) (holding that a state lacks standing to challenge federal law preempting state laws on foster child placement, even though "Congress's Article I powers rarely touch state family law"); *contra Massachusetts v. EPA*, 549 U.S. 497 (2007) (holding that a state had standing to challenge the EPA's decision not to regulate emissions of greenhouse gases because that power was preempted and greenhouse gases affected "the earth and air within its domain"); *contra United States v. Texas*, 599 U.S. 670 (2023) (holding that states near an international border lacked standing to challenge the federal government's immigration enforcement policies because the state's financial injury was not "legally cognizable"); *but see Biden v. Nebraska*, 600 U.S. 477 (2023) (holding that Missouri established standing by showing that it suffered a concrete injury "to a legally protected interest, like property or money"); *contra Dept. of Ed. v. Brown*, 600 U.S. 551 (2023) (holding that individual loan borrowers lacked standing to allege the federal government unlawfully excluded them from a one-time direct benefit program purportedly designed to address harm caused by an indiscriminate global pandemic).

of a pre-enforcement challenge to a statute, a "plaintiff has suffered an injury in fact if he (1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is 'arguably . . . proscribed by the policy in question, and (3) the threat of future enforcement of the challenged policies is substantial." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020)) (cleaned up).

In this case, the Individual and Retail Plaintiffs' standing arguments suffer from many of the same defects discussed by Judge O'Connor in *Knife Rights I*. Regarding Section 1242, the Individual and Retail Plaintiffs assert that they and their business are ready and willing to acquire, possess, carry, and offer for sale, transfer, sell, and distribute through interstate commerce, automatically opening knives, and the only reason they have not done so is because of their fear of prosecution under the FSA. *See* ECF 18 at 11–16[2] (Arnold and RGA); 18–24 (Folloder and MOD); 49–53 (Kaufmann); 55–59 (Warden); 61–64 (Shedd). Additionally, the Retail Plaintiffs purport to represent their potential customers. *See, e.g., id*. at 14 ("My right to pursue the Second Amendment claim in this case through my business derives from my actual and prospective customers, all of whom have a corollary right to keep and bear bladed arms for self-defense and other lawful purposes . . . .").

As a preliminary matter, third-party standing requires a litigant to: (1) show that it suffered an injury-in-fact in the first instance; (2) demonstrate a "close" relationship with the third party, and (3) identify a "hindrance" to the third party's ability to protect his own interests. *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 697 (W.D. Tex. 2015), *aff'd*, 838 F.3d 451 (5th Cir. 2016). The Retail Plaintiffs have wholly failed to establish either a close relationship with their alleged customers or any hindrance to those customers' ability to

---

[2]When citing to the Plaintiffs' Appendix, ECF No. 18, the Court uses the page numbers of the PDF file, not the page numbers of the individual documents in the appendix or the Bates numbers attached by Plaintiffs in the bottom right corner.

protect their own interests. Thus, the Court finds the Retail Plaintiffs cannot establish third-party standing and their standing to challenge Section 1242, like the Individual Plaintiffs, hinges on their own—not their potential customers'—fear of prosecution.

To establish a credible threat of prosecution, a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). It is undisputed that Plaintiffs have expressed their desire to acquire, possess, carry, and offer for sale, transfer, sell, and distribute through interstate commerce, automatically opening knives. It is also uncontested that doing so would violate Section 1242. However, Defendants argue the Individual and Retail Plaintiffs cannot establish standing as the statute is not enforced and, thus, their professed fear of prosecution is merely hypothetical. ECF No. 25 at 7–15. In fact, Judge O'Connor made this very finding in *Knife Rights I*. *See* 2024 WL 2819521, at *3 (stating that the case was "a mere hypothetical dispute lacking the concreteness and imminence required by Article III" as Plaintiffs failed to show a credible threat of prosecution.). Here, Plaintiffs argue they have distinguished this case from *Knife Rights I* and established a credible fear of prosecution for four reasons. ECF No. 29 at 14–22. The Court addresses each in turn.

*First*, Plaintiffs argue they have standing because Section 1242 has previously been enforced and Defendants do not disavow any intention of invoking the criminal penalty provision in the future. ECF No. 29 at 14–19. Plaintiffs point to four prosecutions under Section 1242 that occurred between 2004 and 2010 and argue that because the provision has been enforced in the past their fear of prosecution is reasonable. *Id.* Judge O'Connor addressed this argument and found that Plaintiffs' fear of prosecution was "hypothetical" because there had been no prosecutions under Section 1242 for more than a decade. *Knife Rights I*, 2024 WL 2819521, at *3. That has not changed. Plaintiffs have not shown any recent prosecutions nor that they have been personally threatened with enforcement. Therefore, the Court concludes that

8

Plaintiffs' fear of prosecution based on a handful of prosecutions from nearly fifteen years ago is, at best, conjectural.

*Second*, Plaintiffs point to the U.S. Customs and Border Protection's website which, as of March 2024, stated that travelers should be advised that taking a switchblade into the country is "prohibited" and may result in confiscation. ECF No. 29 at 19–20; *see also* U.S. Customs and Border Protection, *Knowledge Article No. 1123* (Mar. 7, 2024), https://perma.cc/PPF4-9RBY. But Plaintiffs fail to point to any prosecutions that have occurred as a result of this notice and, as they admit, Plaintiffs are not challenging the FSA's importation regulations. ECF No. 1 at 8 ("Plaintiffs do not challenge . . . the Act's importation provision"); ECF No. 29 at 19. Accordingly, Plaintiffs have failed to demonstrate that their proffered fear of prosecution is more than hypothetical based on a notice that is unrelated to their challenged provisions.

*Third*, Plaintiffs contend that a prosecution that occurred in **2007**, eighteen years ago, against Spyderco, Inc. ("Spyderco") and the well-publicized plea agreement demonstrates a "clear shot across the bow against potential violators." ECF No. 29 at 17–18. Specifically, Plaintiffs assert that the Spyderco prosecution serves as a shot across the bow because: (1) is well known in the industry; and (2) Spyderco's plea agreement requires it to provide an acknowledgment and representations form to any distributor it does business with, which states that they must comply with the FSA. *Id.* Plaintiffs' argument fails for three reasons. *First*, Spyderco was prosecuted and convicted under a different statute—not the FSA. *See, e.g., id.* at 17 n.5; *see also* ECF No. 25 at 11. *Second*, the prosecution occurred nearly eighteen years ago. And *third*, Plaintiffs have not provided any prosecutions that have resulted as a result of the notices. Thus, the Court finds, just as above, that mere acknowledgment of a law's existence—without a concrete showing of even its potential enforcement—is insufficient to confer standing on a party for fear of prosecution.

*Fourth*, and finally, Plaintiffs point to the raid of a Knife Rights' members' residence, Johan Lumsden, as evidence of enforcement that substantiates their fear of prosecution under Section 1242. ECF No. 29

at 18. Mr. Lumsden is a resident of Denver, Colorado. ECF No. 29-2 at 2. Mr. Lumsden is a member of Knife Rights and operates a business out of his residence. *Id.* In October 2020, based on a federal search warrant—that identified Section 1242 as a statute that had allegedly been violated—signed in September 2020, Mr. Lumsden's residence was raided by law enforcement. *Id.*; ECF No. 18 at 39. As a result of the raid, Mr. Lumsden was arrested and questioned, and his property, including switchblades and switchblade parts, was seized. ECF No. 29-2 at 2–3. Three years later, in 2023, law enforcement returned Mr. Lumsden's property. *Id.* at 3. Additionally, Mr. Lumsden has not been charged or prosecuted as a result of the raid. *Id.* Defendants argue that because Mr. Lumsden was not prosecuted, and his property was returned, this raid is insufficient to show that the statute is being enforced. ECF No. 25 at 28.

In order to satisfy the injury-in-fact prong, Plaintiffs bear the burden of showing that "the threat of future enforcement of [Section 1242] is substantial." *McCraw*, 90 F.4th at 782. Plaintiffs ask this Court to find that the raid of Mr. Lumsden's residence in 2020 demonstrates the threat of future enforcement of Section 1242 against the Individual and Retail Plaintiffs is substantial. Mr. Lumsden is not a named party in this case.[3] Based on the pleadings, the only connection the Individual and Retail Plaintiffs have with Mr. Lumsden is that they are all members of Knife Rights. The raid occurred nearly five years ago. The search warrant that authorized the raid identified six statutes, of which Section 1242 was an outlier. *See* ECF No. 18 at 41 (identifying two tax statutes, three mail related statutes, and Section 1242). Mr. Lumsden's knives were returned. And Mr. Lumsden was not prosecuted under Section 1242. The Court strains to see how Mr. Lumsden's circumstances establish a substantial threat of future enforcement of Section 1242 against the Individual and Retail Plaintiffs. But the United States Court of Appeals for the Fifth Circuit recently reversed this Court

---

[3]The Court notes that Plaintiffs offer, in their Response, to amend their complaint to potentially add Mr. Lumsden as a party. But given the Court's findings below, such amendment is unnecessary.

in a matter involving a similar standing question. *See Umphress v. Hall*, 133 F.4th 455 (5th Cir. 2025).[4]

In *Umphress*, the Court was faced with the question of whether there was a substantial threat that the Texas State Commission on Judicial Conduct (the "Commission") would enforce an ethics canon against Brian Umphress, a county judge, if he chose not to perform same-sex weddings. *Id.* at 461–62. In *Umphress*, this Court found that Judge Umphress had failed to show a substantial threat of prosecution because: (1) there was no current or imminently pending disciplinary proceeding or investigation against him; (2) the Commission submitted an affidavit stating that there no plans to investigate or discipline Judge Umphress; and (3) the Commission's affidavit also stated that it "will neither investigate nor discipline" Judge Umphress if he refused to perform same-sex weddings. *Umphress v. Hall*, 500 F. Supp. 3d 553, 559 (N.D. Tex. 2020) (Pittman, J.). On appeal, five years later, the Fifth Circuit reversed this Court's standing determination because the Commission had issued a public warning—which the Commission subsequently rescinded—to a different judge providing that her refusal to perform same-sex marriages and public comments about the same may violate the judicial ethics code. *Umphress*, 133 F.4th at 462 (acknowledging the Commission's recission of the warning), 466–67 (finding standing). Based on *Umphress*, a rescinded warning against a non-party is enough to establish a substantial threat of prosecution against a plaintiff, despite the enforcing body swearing on the record that it would not investigate or prosecute the plaintiff if he took the offending action that served as the basis of his lawsuit. If that is the case, then it is seemingly indisputable that a five-year-old federal search warrant and raid of a non-party's residence that involved Section 1242

---

[4]In contrast, the Fifth Circuit also recently affirmed the undersigned's standing determination in another case involving an injury-in-fact question. *See Paxton v. Dettelbach*, 105 F.4th 708 (5th Cir. 2024). The Fifth Circuit agreed with the undersigned's determination that the injury in fact was too speculative even though there was a well-established pattern of prosecutions under the statute, and the plaintiffs stated in affidavits that they would possess a firearm silencer if it was not for the statute making it illegal. *Id.* at 712–15.

is enough to establish the Individual and Retail Plaintiffs' fear of prosecution. Accordingly, despite the Court's inclination otherwise, the Court is bound by *Umphress* and, thus, must find that the Individual and Retail Plaintiffs have standing to challenge Section 1242.[5]

### b. Knife Rights

The Court now turns to whether Knife Rights has standing to challenge Section 1242. There are two ways for an organization to demonstrate standing. *First*, the organization can assert associational standing on behalf of its members. *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Props., L.L.C.*, 82 F.4th 345, 350–51 (5th Cir. 2023). The associational standing doctrine permits a traditional membership organization "to invoke the court's [injunctive or declaratory] remedial powers on behalf of its members . . . ." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). To do so, the organization must satisfy the three-prong *Hunt* test by showing that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). "When a defendant contests an organization's standing based on a factual challenge to the standing of a member whose standing to sue in his own right controls the organization's standing, the Rule 12(b)(1) motion is also a factual attack," and the same standard applies. *Patterson v. Rawlings*, 287 F. Supp. 3d 632, 643 (N.D. Tex. 2018) (Fitzwater, J.).

*Second*, an organization can also have standing in its own right. *La. Fair Hous. Action Ctr., Inc.*, 82 F.4th at 350. "An organization can

---

[5]Although the Court is doubtful the Supreme Court would determine Plaintiffs have standing, the Court is first and foremost obligated to faithfully apply the binding precedent of the Fifth Circuit in Umphress to determine standing. *See, e.g., Poindexter v. R.J. Reynolds Tobacco Co.*, 2000 WL 358473, at *2 (N.D. Tex. Apr. 7, 2000) (Kendall, J.) ("Although this Court is not without sympathy towards the [party's] outrage, this Court is bound by the Fifth Circuit['s] legal interpretations."), *aff'd*, 237 F.3d 630 (5th Cir. 2000).

establish standing in its own name if it meets the same standing test that applies to individuals." *Id.* at 351 (internal citation and quotations omitted). As previously stated, the "irreducible constitutional minimum of standing contains three elements: (1) The plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision." *Morgan*, 879 F.3d at 606 (citing *Lujan*, 504 U.S. at 560–61 (cleaned up)).

"An organization may establish a cognizable injury by showing that its ability to pursue its mission is perceptibly impaired because it has diverted significant resources to counteract the defendant's conduct." *La. Fair Hous. Action Ctr., Inc.*, 82 F.4th at 351 (cleaned up). "However, not every diversion of resources rises to an injury sufficient to confer standing," or every organization would presumably have Article III standing. *Id.* "The organization's purportedly injurious counteractions must differ from its routine activities." *Id.* (cleaned up). Further, "expenses that are substantively related to future litigation do not suffice." *Id.* (quotation omitted). Again, since the Government has not presented evidence attacking Knife Rights' individual standing, this is a facial attack, and the Court reviews only the sufficiency of the pleading's allegations, presuming them to be true. *See Paterson*, 644 F.2d at 523.

In this case, Knife Rights asserts that it has standing in its own right and on behalf of its members. ECF No. 29 at 22–25. Specifically, Knife Rights asserts that it has standing in its own right because it has "incurred extraordinary and distinct expenditures of time, effort, and cost on litigation matters to protect knife rights and that those extraordinary expenditures have placed a real, concrete drain on Knife Rights' resources, particularly the funds relied upon from our member contributions to also pursue our other customary political, educational, and legislative efforts." *Id.* at 23 (internal citation omitted). The Court finds that Knife Rights has failed to establish standing in its own right because its alleged injury (spending substantial assets on litigation challenging the FSA) is not distinct from its normal activities and are related to litigation—which are both insufficient to confer standing. *See*

*Knife Rights I*, 2024 WL 2819521, at *5 (rejecting this same argument). However, because the Individual Plaintiffs and Mr. Lumsden are members of Knife Rights, and they have standing, Knife Rights also has standing to challenge Section 1242 on behalf of its members. *La. Fair Hous. Action Ctr., Inc.*, 82 F.4th at 350.[6]

## 2. Section 1243

Defendants also challenge Plaintiffs' standing to challenge Section 1243 of the FSA, which prohibits the manufacture, sale, or possession of any "switchblade knife" within "Indian country," including tribal reservations, and federal land, such as BLM public land and National Parks. 15 U.S.C. § 1243. Just as above, the Court begins with the Individual and Retail Plaintiffs and concludes with Knife Rights.

### a. Individual and Retail Plaintiffs

The Individual and Retail Plaintiffs rely on substantially the same allegations in their bid for standing to challenge Section 1243 that they relied on for Section 1242. *See* ECF No. 29 at 14–22 (discussing the Spyderco plea agreement, raid of Mr. Lumsden's residence, and their fear of prosecution). Here, however, the Court finds that the Individual and Retail Plaintiffs lack standing to challenge Section 1243.

Just as with Section 1242, the Individual and Retail Plaintiffs submitted affidavits in support of their standing argument. With regard to Section 1243, they assert that if it was not for their fear of prosecution under the FSA they: (1) would travel across state line or onto federal property with their switchblades for either personal or business reasons (ECF No. 18 at 21, 52–53); (2) take a switchblade with them for hunting on federal land or across state lines (*id*. at 58–59); and (3) possess a switchblade for personal protection at their home on federal land (*id*. at 62–64). Just as above, none of these allegations are sufficient to confer standing unless their fear of prosecution is based on a substantial threat of enforcement.

---

[6]The other two prongs of the *Hunt* test are not in dispute. Therefore, the Court also finds that the interests Knife Rights seeks to protect are germane to its purpose and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

The Court found above that under binding Fifth Circuit precedent the raid of Mr. Lumsden's residence was sufficient to confer the most tenuous of standing to Plaintiffs to challenge Section 1242. Here, however, the Court finds that it is insufficient to confer standing to challenge Section 1243. Despite Plaintiffs' assertions otherwise, the raid of Mr. Lumsden's residence only involved Section 1242—*not* Section 1243. *See* ECF No. 18 at 41. Thus, because the Lumsden raid did not involve Section 1243, it cannot substantiate the Individual and Retail Plaintiffs' fear of prosecution. Additionally, just as above, the Court finds that the Spyderco plea agreement is insufficient to demonstrate a substantial likelihood of enforcement. Moreover, while Plaintiffs were able to point to four prosecutions under Section 1242 between 2004 and 2010, they are unable to point to any prosecutions under Section 1243 since 2004 (which is the most recent data available). *See* ECF No. 25-1 at 2. Therefore, the Court finds that the Individual and Retail Plaintiffs do not have standing to challenge Section 1243.

b. *Knife Rights*

The Court now turns to whether Knife Rights has standing to challenge Section 1243. As with Section 1242, Knife Rights asserts that it has standing in its own right and on behalf of its members. ECF No. 29 at 23–25. For the reasons set out above, the Court again finds that Knife Rights does not have standing in its own right. Further, because Knife Rights' members do not have standing to challenge Section 1243, it also does not have standing to challenge it on their behalf. Thus, the Court concludes that Knife Rights lacks standing to challenge Section 1243.

3. Section 1244

Finally, the Court turns to Plaintiffs' challenge to Section 1244. Plaintiffs consistently lump Section 1244 in with the other sections and allege that they fear prosecution under Section 1244. *See, e.g.*, ECF No. 1 at 36–37. Section 1244 provides:

Sections 1242 and 1243 of this title shall not apply to—

(1) any common carrier or contract carrier, with respect to any switchblade knife shipped, transported, or delivered

15

for shipment in interstate commerce in the ordinary course of business;

(2) the manufacture, sale, transportation, distribution, possession, or introduction into interstate commerce, of switchblade knives pursuant to contract with the Armed Forces;

(3) the Armed Forces or any member or employee thereof acting in the performance of his duty;

(4) the possession, and transportation upon his person, of any switchblade knife with a blade three inches or less in length by any individual who has only one arm; or

(5) a knife that contains a spring, detent, or other mechanism designed to create a bias toward closure of the blade and that requires exertion applied to the blade by hand, wrist, or arm to overcome the bias toward closure to assist in opening the knife.

15 U.S.C. § 1244.

Section 1244 contains exceptions to Sections 1242 and 1243. *Id.* It is not a provision under which Plaintiffs can be prosecuted. Therefore, the Court finds that Plaintiffs have failed to demonstrate their professed fear of prosecution under Section 1244 and lack standing to challenge it.

## B. Failure to State a Claim

Because, as discussed above, Plaintiffs have standing to challenge Section 1242, the Court now turns to Defendants' argument that Plaintiffs have failed to state a claim upon which relief can be granted. Specifically, Defendants argue Plaintiffs have failed to state a claim because Section 1242 does not implicate the Second Amendment. ECF No. 25 at 19–21. In support, Plaintiffs cite to *McRorey v. Garland*, for the proposition that keeping and bearing arms does not include restrictions on the sale of arms that are not "so burdensome that they act as *de facto* prohibitions on acquisition." 99 F.4th 831, 838 (5th Cir. 2024). In their Response, Plaintiffs claim that Defendants are wrong because in *Reese, v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,* the Fifth Circuit held that keeping and bearing arms implies the right to purchase them. 127 F.4th 583 at 589–90 (5th Cir. 2025). For the reasons set out below, even assuming without deciding that Knives

are arms under the Second Amendment, the Court finds that Section 1242 is not violative of Plaintiffs' right to keep and bear arms.

The issue presented by Section 1242 is whether restricting the interstate commerce of switchblade knives infringes Plaintiffs' Second Amendment right to bear arms. As a necessary predicate to the right of possession, the right of acquisition is protected, too. If it were not, the letter of the Second Amendment would be stripped of all substance. *See Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them . . . ."). The question of what bounds may properly be placed on the right to sell and purchase arms before they run afoul of the Second Amendment has been percolating through the United States Courts of Appeal.

In *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024), the Fifth Circuit considered a challenge to an expansion of federal background check procedures that required a ten-day waiting period in which to await the results of a background check before a gun could be acquired. The Fifth Circuit analyzed *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) as "distinguish[ing] the treatment of prohibitions on 'keeping and bearing'—such as the law at issue in *Bruen*—and other ancillary firearm regulations such as background checks preceding sale." *McRorey*, 99 F.4th at 836–37. The Fifth Circuit noted that the Second Amendment's "plain text covers plaintiffs' right 'to keep and bear arms,'" which "on its face . . . does not include purchase—let alone without a background check." *Id.* at 838. Additionally, the Fifth Circuit stated that "[t]he right to 'keep and bear' can implicate the right to purchase. That is why the Court prohibits shoehorning restrictions on purchase into functional prohibitions on keeping. But such an implication is not the same thing as being covered by the plain text of the amendment." *Id.* Ultimately, the Fifth Circuit concluded that the background checks and the ten-day waiting period were "presumptively lawful," and the ten-day period did not amount to "a *de facto* prohibition on possession," which would subject the regulation to *Bruen*'s historical framework. *Id.* at 840.

Subsequently, just a few months after *McRorey,* the Fifth Circuit considered a federal ban on sales to persons under the age of twenty-one

by federally licensed firearms dealers. *Reese v. Bureau of Alcohol, Tobacco, and Firearms*, 127 F.4th 583, 586 (5th Cir. 2025). The Fifth Circuit acknowledged its holding in *McRorey* but distinguished the statute at issue, held that it amounted to a total ban, and concluded that such a prohibition was facially unconstitutional. *Id.* at 589–90, 600.

The Tenth Circuit was also recently presented with a similar question in *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024), in which it upheld a Colorado statute that prohibited the purchase of firearms by persons under the age of twenty-one. The Tenth Circuit undertook a similar analysis as the Fifth Circuit and concluded that the Supreme Court's Second Amendment cases contain a "recognition that certain 'longstanding' regulations—including 'laws imposing conditions and qualifications on the commercial sale of arms,'—are 'presumptively lawful.'" *Rocky Mountain*, 121 F.4th at 118 (quoting *D.C. v. Heller,* 554 U.S. 570, 626–27 & n.26 (2008)). The Tenth Circuit interpreted "*Bruen*'s 'abusive ends' limitation to mean that any condition or qualification on the sale or purchase of firearms, if found to have such abusive ends, negates the presumption that the law or regulation is lawful." *Id.* at 122 (quoting *Bruen*, 597 U.S. at 38 n.9).

In *Sedita v. United States*, 763 F. Supp. 3d 63 (D.D.C. 2025), a plaintiff sued alleging that "the Government's retention of inaccurate information" resulted in an erroneous denial of his right to a firearm. *Id.* at 67. While the D.C. Circuit disagreed with the Fifth Circuit's considering of this issue at step one of the *Bruen* test—arguing that it should be considered at step two—it affirmed the proposition that some regulations on the sale of arms are permissible as long as the regulation does not serve as an outright ban on the right to keep and bear arms. *Id.* at 78–80. Ultimately, the case was remanded for additional factual development on whether the delays were so pervasive they amounted to an effective denial. *Id.* at 80.

These cases illustrate an emerging consensus that ancillary regulations that impose preconditions on the acquisition of arms ought to be treated differently from those that directly restrict the right to keep and carry them. While there is some inter-Circuit debate over how that rule should apply, all agree that the ancillary regulations are of a

different kind. However, none of them have applied this principle to a statute that bans interstate commerce of an arm but leaves intrastate commerce unregulated. Thus, the question before the Court is whether Section 1242's prohibition against the introduction, manufacture for introduction, transportation, or distribution into interstate commerce of switchblade knives serves as "a *de facto* prohibition on possession" of switchblade knives when they are widely available in intrastate commerce.[7] *McRorey*, 99 F.4th at 840.

The Commerce Clause has been interpreted in such a way as to bestow broad authority over interstate commerce to Congress. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 548–50 (2012). In fact, Congress's power under the Commerce Clause is so broad that sometimes it can regulate purely intrastate activity. *See, e.g., Wickard v. Filburn*, 317 U.S. 111 (1942). As a consequence, it is undeniable that Section 1242 is not violative of the Commerce Clause. However, binding Fifth Circuit precedent commands that it be found to be violative of the Second Amendment if it serves as an outright prohibition against acquisition.

In *Reese*, the Fifth Circuit found that the statute at issue ran afoul of the Second Amendment because it completely banned "the most common way to secure" a firearm for eighteen- to twenty-one-year-olds. *Reese*, 127 F.4th at 590 n.2. The statute in *Reese* applied to the sale of firearms by licensed dealers, even if the firearm was manufactured and sold entirely in intrastate commerce. Thus, while the Fifth Circuit did not consider the interplay between interstate and intrastate commerce, it is clear that the *Reese* statute acted as an effective ban on possession because it prohibited the sale of firearms to under-twenty-one-year-olds in both interstate and intrastate commerce.

Here, however, Section 1242 does not. In fact, according to Plaintiffs' own evidence, switchblades are widely distributed, sold, and used in intrastate commerce. A review of Plaintiffs' Response and other filings

---

[7]The Court again reiterates that for the purposes of this Motion to Dismiss it is assuming without deciding that knives are arms under the Second Amendment.

shows that: (1) the number of switchblade knives "owned and used in the United States is in the **_millions_** . . ." (ECF No. 22 at 106) (emphasis added); (2) current "monthly shipments distribute three to four thousand knives per month" (ECF No. 29 at 35–36); (3) "thousands of different models of [switchblade] knives exist for sale for lawful use" (*id.* at 36); (4) switchblades are legal to purchase, posses, and carry in more than forty states (*id.*); and (5) switchblades account for approximately **_eighty percent_** of the current knife market (*id.* at 38) (emphasis added). While Section 1242 may serve as an outright ban on the sale of switchblades in interstate commerce, it is clearly distinguishable from the *Reese* statute in that it allows for what can only be described as a robust intrastate market. Keeping in mind the general proposition that courts should be wary of invalidating congressionally enacted statutes (especially long-standing ones) and the Circuit Courts' agreement that these types of statutes should be treated differently from those that directly restrict the right to keep and carry; the Court finds that Section 1242 does not serve as a "a *de facto* prohibition on possession" or an "outright ban."[8] Therefore, the Court concludes that Section 1242 does

---

[8]The judicial branch must tread carefully when it exercises authority in areas best left to the legislative branch. See Letter from Thomas Jefferson to Charles Hammond (Aug. 18, 1821), in 15 THE WRITINGS OF THOMAS JEFFERSON 330–33 (Albert Ellery Bergh Ed.) (1905) ("It has long however been my opinion, and I have never shrunk from its expression . . . that the germ of dissolution of our federal government is the constitution of the federal judiciary . . . working like gravity by night and by day, gaining a little-to-day and a little tomorrow, and advancing its noiseless step like a thief, over the field of jurisdiction . . . [t]o this I am opposed because . . . it will render powerless the checks provided of one government on another . . . ."). Rather, this Court agrees with the late Senator Orrin Hatch, who said, "[i]f a judge crosses the line between interpreting and making the law, he has crossed the line supporting his legitimate authority from the legislative branch's authority. Now, to me that's a very serious matter if we believe, as America's founders did, that the separation of powers—not just a in theory or in textbook but in practice in the actual functioning of the government—is the linchpin of limited government and liberty." *Hearing on the Nomination of John Roberts to be Chief Justice of the Supreme Court Before the Senate Judiciary Committee*, 109th Cong. (2005) (statement of Sen. Orrin Hatch, member, S. Jud. Comm.).

Considering that switchblades are widely available nationwide, and the FSA is uniformly not enforced, rather than continuing to utilize precious judicial resources, perhaps a better avenue for Plaintiffs to challenge the FSA

not violate the Second Amendment. Therefore, Defendants' Motion should be **GRANTED**.

## CONCLUSION

For the reasons set out above, Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED** as moot. Accordingly, Plaintiffs' claim as to Section 1242 is **DISMISSED with prejudice** and Plaintiffs' claims as to Sections 1243 and 1244 are **DISMISSED without prejudice.**

**SO ORDERED** on this **22nd day of May 2025.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

---

would be asking the elected Legislative Branch to repeal it. *See Speaker Sam Rayburn, quoted in* D.B. Hardeman & Donald C. Bacon, RAYBURN: A BIOGRAPHY 429 (1987) ("A [politician] who is not willing to get out and defend what he has done will ultimately find himself in poor shape politically."). As President Lyndon B. Johnson was fond of admonishing Congress, "Come now, let us reason together." John Bartlett, FAMILIAR QUOTATIONS 872 (15th ed. 1980).